1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    VERA KUZMENKO,                          No. 2:25-cv-00663-DJC-AC

12                   Plaintiff,

13          v.                                ORDER

14    ARINDA PHILLIPS, et al.,

15                   Defendants.

16

17

18          Pending before the Court is Petitioner Vera Kuzmenko's Motion for a

19    Temporary Restraining Order (Mot. TRO (ECF No. 6)). Petitioner was released to

20    home confinement by the Bureau of Prisons under the First Step Act due to having

21    received sufficient Good Conduct Time and First Step Act Earned Time Credits (FSA

22    Credits) to warrant her release under "prerelease custody." (*Id.* at 3.) Several weeks

23    later, despite having complied with all of the terms of her release plan, she was

24    arrested and placed back in custody. (*See id* at 4.) While she was not told the reason

25    why, it appears this was due to an active immigration detainer against her. (*Id.* 4–5.)

26    Petitioner now seeks release from custody and return to home confinement pending a

27    decision on her Petition for Writ of Habeas Corpus under 18 U.S.C. § 2241 (ECF No.

28    1). Respondents argue that the Motion should be denied because this Court lacks

                                            1

jurisdiction and statutory authority.  (*See* Kuzmenko Opp'n (ECF No. 10) at 1.)  For the reasons discussed below, the Court GRANTS the Motion for Temporary Restraining Order and orders Ms. Kuzmenko transferred back into to prerelease custody.

I.    **Background**

A.  **Statutory Background**

This Motion arises in the context of the First Step Act.  The Act was signed into law in December 2018 and amended 18 U.S.C. §§ 3621, 3624, and 3632.  First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018).  These amendments provide that the Bureau of Prisons give prisoners the chance to receive "earned time credits" for participating in "recidivism reduction programs."  *See* 18 U.S.C. §§ 3621(h), 3632(a); *see also Bottinelli v. Salazar,* 929 F.3d 1196, 1197–98 (9th Cir. 2019).  Section 3632 provides that a prisoner may receive earned time credits, explains how the credits are to be applied, and states what disqualifies a prisoner from receiving such credits.  Principally at issue in this case is section 3632(d)(4)(C), which reads:

> "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."

18 U.S.C. § 3632(d)(4)(C).

B.  **Factual Background**

Petitioner Vera Kuzmenko brings a Motion for Temporary Restraining Order seeking immediate release from custody and return to home confinement pending a decision on her Petition for Writ of Habeas Corpus under 18 U.S.C. § 2241.[1]

---

[1] The Court DENIES without prejudice Respondents' request to dismiss and strike all improperly named individuals given the expediting briefing schedule here.  The Court also DENIES Respondents' request to stay proceedings in this matter pending the resolution of the motion for compassionate release filed in 2:11-cr-00210-DAD-DB.

2

1    Alternatively, she seeks release pending resolution of her habeas petition.  In 2016,

2    Petitioner had been sentenced to a term of 168 months, followed by three years of

3    supervised release for wire fraud and related counts.  (Mot. TRO at 3.)  While in prison,

4    Petitioner participated in recidivism programs, received no disciplinary write ups, and

5    paid off the financial obligations arising from her conviction.  (*Id.*)  As a result, she

6    earned Good Time Conduct and FSA Credits while she served her sentence.  (*Id.*)  In

7    October 2024, the BOP determined she earned enough credits to be eligible for

8    prerelease custody to either a halfway house or home confinement.  (*Id.* at 3–4.)  By

9    January 16, 2025, Petitioner was transferred to home confinement.  (*Id.* at 4.)  Upon

10    her release, she reported to a Residential Reentry Center in San Francisco, California.

11    (*Id.*)  While released, Petitioner lived with her daughter in an approved home in

12    Loomis, California and contends that she met all of the conditions of her home

13    confinement.  (*Id.*)

14         In February 2025, the Residential Reentry Center in San Francisco told

15    Petitioner that her home confinement was to be taken over by a Sacramento agency.

16    (*Id.*)  When Petitioner first reported to the new agency, staff made copies of her

17    license and green card.  (*Id.*)  After being told to wait in conference room, deputies

18    from the U.S. Marshals Service arrested her.  (*Id.*)  In what the Court considers a

19    troubling exchange, the deputies asked if she had violated the terms of her home

20    confinement, and after telling them she had not, they told her that they did not know

21    why they were instructed to arrest her.  (*Id.*)  Petitioner was taken to Sacramento

22    County Jail, and she continues to be detained.[2]  (*Id.*)

23         To this day, Petitioner has not received an explanation as to the reason for her

24    arrest or subsequent detention.  (*Id.*)  Rather, her counsel has unofficially been

25    informed that her arrest and detention was pursuant to a BOP National Directive

26    instructing Residential Reentry Centers to arrest and detain all persons in the centers

27

28    [2] During oral argument, Petitioner's counsel informed the Court that Petitioner was recently transferred from Sacramento County Jail to a federal prison.

1  and home confinement who have active immigration detainers. (*Id.* at 4-5.)

2  Petitioner, who has an unresolved immigration detainer[3], believes that this

3  explanation is consistent with a BOP Memorandum issued on January 30, 2025. (*Id.* at

4  5.) This Memorandum cancels all referrals and transfers to Residential Reentry

5  Centers and Home Confinement for BOP prisoners with unresolved immigration

6  detainers. (*Id.*) Respondents oppose the instant Motion, arguing primarily that this

7  Court lacks jurisdiction over the matter.[4]

8  **II.    Subject Matter Jurisdiction**

9         Respondents first argue that this Court lacks jurisdiction to hear the underlying

10  habeas petition because where Petitioner serves her time on prerelease custody is not

11  within the "core of habeas." (Kuzmenko Opp'n at 3.) "[T]he essence of habeas corpus

12  is an attack by a person in custody upon the legality of that custody." *Preiser v.*

13  *Rodriguez,* 411 U.S. 475, 484 (1973). However, where success on a petitioner's claim

14  "would not necessarily lead to [her] immediate or earlier release from confinement"

15  then it "does not fall within 'the core of habeas corpus.'" *Nettles v. Grounds,* 830 F.3d

16  922, 935 (9th Cir. 2016) (citation omitted). While the federal courts do not have

17  jurisdiction to review discretionary decisions about individuals made by BOP, *see*

18  *Reeb v. Thomas,* 636 F.3d 1224, 1228 (9th Cir. 2011), the Ninth Circuit has

19  emphasized repeatedly that "courts have jurisdiction over habeas petitions alleging

20  'that BOP action is contrary to established federal law, violates the United States

21  Constitution, or exceeds its statutory authority.'" *Close v. Thomas,* 653 F.3d 970, 970-

22  74 (9th Cir. 2011) (citing *Reeb,* 636 F.3d at 1228).

23

24  ────────────────

    [3] Petitioner is uncertain if she will ever actually be arrested on this detainer given her citizenship status.
25  She was born in the Soviet Union and is not considered a citizen of Uzbekistan, which is the modern-day
    area of where she was born. (Mot. TRO at 5 n.2.)

26
    [4] Given that there is a related case in this matter, 2:25-cv-00687-DJC-AC, that addresses similar issues
27  of fact and the same questions of law, the Court also considers arguments made in the Respondents'
    opposition filed in that case. (Martin Opp'n, (ECF No. 12.).) The Court provided the Petitioners in this
28  case the opportunity to file a sur reply to address the arguments raised in that filing.

Petitioner's claim is that the BOP violated the First Step Act by denying her from applying her earned FSA Credits based on her unresolved immigration detainer. (*See* Mot. TRO at 7–8.)  Respondents contend that the success of Petitioner's claim does not change her duration in confinement and that her placement while serving her term is squarely within the BOP's discretion. (Martin Opp'n at 3–4.)  Respondents rely on the Supreme Court's holding in *Sandin v. Conner,* 515 U.S. 472 (1995), to argue that removing Petitioner from home confinement and returning her to prison does not deprive her of any liberty interest because confinement in prison is not atypical of what inmates endure as part of a custodial sentence.

However, *Sandin v. Conner* involved the difference in placing a prisoner in disciplinary segregated confinement versus remaining in the general population.  *Id.* at 486.  In making its determination, the Court explained that segregated confinement did "not present a dramatic departure from the basic conditions of" the prisoner's indeterminate sentence.  *Id.* at 485.  Rather, disciplinary segregation, with insignificant exceptions, did not exceed similar, but discretionary, confinement in either duration or degree of restriction.  *Id.* at 486.  The Court acknowledges that although Petitioner's claim here may not ultimately change the length of her custody, success on her argument would lead to her "earlier release from confinement."  Unlike the differences in confinement outlined in *Sandin*, the difference between home confinement and detention in a custodial setting is undoubtedly significant.

More relevant is the Supreme Court's decision in *Young v. Harper*, 520 U.S. 143 (1997).  In that case, the Court reviewed a habeas petition after the respondent was placed on a preparole program and spent five months outside the penitentiary, but was ultimately denied parole and sent back into custody without the procedural protections outlined in *Morrissey v. Brewer,* 408 U.S. 471 (1972).  *Harper,* 520 U.S. at 144–45.  The Supreme Court found that preparole, as it existed at the time of respondent's release, was sufficiently equivalent to parole so as to warrant similar due process protections.  *Id.* at 147.  Importantly, the Court noted that although

respondent was not free from limitations of his personal liberty, he was released from

prison before the expiration of his sentence, kept his own residence, maintained a job,

and "relied on at least an implicit promise that [preparole] will be revoked only if he

fails to live up to the [preparole] conditions." *Id.* at 147–48.  This Court finds it

significant that (1) the Supreme Court considered the habeas petition in a matter

where the ultimate duration of the custody appeared to remain the same, but success

on the claim could result in an earlier release from incarceration, and (2) that the

Supreme Court endorsed the view that preparole is "very different from that of

confinement in a prison." *Id.* at 147.  Here, it is more likely that home confinement,

which grants Petitioner many of the freedoms outlined in *Young*, resembles a

preparole situation more so than one of an institutional setting.  Thus, relief from

incarceration would constitute an immediate or earlier relief from confinement and

gives this Court subject matter jurisdiction.

   To be sure, the Director of BOP is granted some discretion in how to effectuate

section 3632(d)(4)(C).  For instance, he or she may require that prerelease custody be

served in a residential reentry center or in home confinement.  That decision arguably

implicates section 3621, and in any event is not one that can be reviewed by this

Court.  Similarly, as discussed below, the Director may decide whether to apply the

FSA credits to prerelease custody or supervised release, a discretionary decision that

may also not be reviewed by this Court.  Many of the cases cited by Respondent in

support of her argument that the Court lacks jurisdiction involve these discretionary

decisions, which are distinguishable from this case.  For example, the CARES Act

allowed the BOP Director to "lengthen the maximum amount of time for which the

Director is authorized to place a prisoner in home confinement, under the first

sentence of section 3624(c)(2) of title 18, United States Code, <u>as the Director deems</u>

<u>appropriate</u>."  CARES Act, Pub. L. No. 116-135, § 12003(b)(2) (2020) (emphasis

added).  Given the clear, discretionary language, courts routinely concluded they

lacked jurisdiction to review home confinement eligibility under the CARES Act.  *See*

1    *Diaz-Lozano v. B.M. Trate,* No. 1:22-cv-01403 JLT SKO, 2022 WL 17417716, at *1 (E.D.

2    Cal. Dec. 5, 2022) (collecting cases) (listing cases finding federal habeas petitions

3    cannot be based on the CARES Act).

4         The Court recognizes that to some extent, the issue of subject matter

5    jurisdiction raises and falls with the interpretation of the FSA.  However, the core of

6    Petitioner's claim centers on the BOP exceeding its statutory authority as it pertains to

7    FSA credit application, rather than an individualized, discretionary decision.  Thus, the

8    Court finds that it has subject matter jurisdiction.  *See Martinez v. Gutierrez,* No. 4:22-

9    cv-00505 RM, 2023 WL 6466490, at *4 (D. Ariz. July 14, 2023) (finding that jurisdiction

10    existed where petitioner challenged BOP policy as contrary to section 3632(d));

11    *Ramirez v. Phillips,* No. 2:23-cv-02911 KJM JDP, 2023 WL 8878993, at *2 (E.D. Cal.

12    Dec. 22, 2023) (finding that petitioner's claim that BOP rescinded his FSA credits in

13    violation of federal law falls within the core of habeas corpus because success would

14    necessarily lead to a speedier release).

15    **III.    Exhaustion of Remedies**

16         The Prison Litigation Reform Act mandates exhaustion of administrative

17    remedies, as unexhausted claims cannot be brought in court.  *Jones v. Bock,* 549 U.S.

18    199, 211 (2007).  However, courts have discretion to waive the exhaustion

19    requirement when administrative remedies are inadequate or their exercise would be

20    futile, or irreparable injury would result without immediate judicial intervention.  *See*

21    *Laing v. Ashcroft,* 370 F.3d 994,1000 (9th Cir. 2004).  A key consideration in exercising

22    this discretion is whether "relaxation of the requirement would encourage deliberate

23    bypass of the administrative scheme."  *Id.* at 1000 (citation and quotation omitted).

24         Respondent argues that administrative exhaustion is required because there is

25    no final order or record from BOP to review.  That is a problem of BOP's own making,

26    however: it has not given Petitioner a reason for her confinement despite having her in

27    their custody for three weeks.  Moreover, Petitioner argues that administrative

28    exhaustion would be futile because BOP's arrest was allegedly due to its national

1  policy and because a showing of irreparable harm exists here.  Because the Court

2  finds that irreparable harm exists here, the Court waives the exhaustion requirement.

3  **IV.    Temporary Restraining Order**

4      **A. Legal Standard**

5          A temporary restraining order may be issued upon a showing "that immediate

6  and irreparable injury, loss, or damage will result to the movant before the adverse

7  party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  In determining whether

8  to issue a temporary restraining order, courts apply the factors that guide the

9  evaluation of a request for preliminary injunctive relief: (1) likelihood of success on the

10  merits; (2) irreparable harm in the absence of preliminary relief (3) the balance of

11  equities and (4) the public interest.  *See Winter v. Natural Res. Def. Council, Inc.,* 555

12  U.S. 7, 20 (2008); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832,

13  839 n.7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders

14  and preliminary injunctions is "substantially identical").

15          There is an even higher burden where the type of injunction sought is a

16  "mandatory injunction."  *See Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015)

17  (explaining that the plaintiff faced a "doubly demanding" burden for a mandatory

18  injunction).  To obtain a mandatory injunction, a plaintiff must show that "the law and

19  facts *clearly favor* her position, not simply that she is likely to succeed."  *Id.* (emphasis

20  in original).  Because a mandatory injunction requires that a responsible party take an

21  action, they are "not granted unless extreme or very serious damage will result. . . ."

22  *Marlyn Nutraceuticals, Inc., v. Mucos Pharma GmbH & Co.,* 571 F.3d 878–79) (9th Cir.

23  2009).  The Court finds that this heightened burden is met in this case.

24      **B. Discussion**

25          **1. Likelihood of the Success on the Merits**

26          The first *Winter* factor, the likelihood of success on the merits, "is a threshold

27  inquiry and is the most important factor."  *Baird v. Bonta,* 81 F.4th 1036, 1042 (9th Cir.

28  2023) (quoting *Env't Prot. Info. Ctr*., 968 F.3d 985, 989 (9th Cir. 2020)).  Petitioner

argues that the BOP violated the FSA by denying her the ability to apply her earned

FSA Credits toward home confinement based on her unresolved immigration

detainer.  Specifically, Petitioner contends that the language of section 3632(d)(4)(C)

imposes a mandatory duty on the BOP to allow eligible prisoners to apply their FSA

Credits.

        As an initial matter, the Court is deeply concerned by BOP's failure to provide

Petitioner with a reason as to why she has been taken back into custody.  Detaining an

individual without any explanation is not only chilling, but also flatly inconsistent with

any notion of due process.  Petitioner also contends, and the Respondents do not

deny, that she had not violated any terms of her home confinement prior to her arrest.

Rather, in their Opposition Respondents concede that the reason for Petitioner's

detention was her active immigration detainer and do not provide any other basis for

her detention.  (Kuzmenko Opp'n at 3.)

        The Court now turns to the text of section 3632(d)(4)(C), which reads:

> "[t]ime credits earned under this paragraph by prisoners who
> successfully participate in recidivism reduction programs or
> productive activities <u>shall</u> be applied toward time in prerelease
> custody or supervised release.  The Director of the Bureau
> of Prisons <u>shall</u> transfer eligible prisoners, as determined under
> section 3624(g), into prerelease custody or supervised release."

18 U.S.C. § 3632(d)(4)(C) (emphasis added).  Other courts in the Ninth Circuit,

including a court in this District, have interpreted this language to mean that the BOP

does not have the discretion to exclude an eligible prisoner from having his earned

time credits applied under the FSA, because the FSA language in 18 U.S.C.

§ 3632(d)(4)(C) is mandatory.  *Ramirez,* 2023 WL 8878993, at *4 (agreeing with other

courts in finding that the language in section 3632(d)(4)(C) is mandatory); *see Jones v.*

*Engleman,* No. 2:22-cv-05292 MGS GJS , 2022 WL 6563744, at *10 (C.D. Cal. Sept. 7,

2022), *report and recommendation adopted in part, rejected in part,* 2022 WL

6445565, at *1 (C.D. Cal. Oct. 7, 2022) (adopting in relevant part the statutory analysis in the findings and recommendations finding that section 3632(d)(4)(C) is mandatory); *see also Woodley v. Warden, USP Leavenworth*, No. 5:24-cv-03053 JWL, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) (stating that a plain reading of the section 3632(d)(4)(D) requires BOP to transfer a prisoner to prerelease custody or supervised release if the prisoner is "eligible" as pursuant to subsection 3624(g)). Under this reading, it appears to the Court that Petitioner had a right to apply her earned credits to a non-prison setting, although the form of custody (home confinement versus a residential reentry center) would be up to the BOP's discretion.

Respondents argue[5] that even though the section uses the word "shall", section 3632(d)(4)(C) does not eliminate the BOP's discretion over the use of prerelease custody under section 3621(b). In making this claim, Respondents contend that section 3632(d)(4)(C) incorporates section 3624(g), titled "prerelease custody or supervised release for risk and needs assessment system participants", by reference. The Court does not disagree with this reading. Respondents further argue that section 3624(g)(10) in turn references a portion of section 3624(c) that discusses prerelease time limits and also a provision expressly incorporating and preserving BOP's discretion under section 3621(b). Respondent then argues that this provision regarding BOP's discretion also applies to section 3632(d)(4)(C). The Court finds that this argument is flawed.

Section 3624(g)(10) reads: "[t]he time limits under subsections (b) and (c) shall not apply to prerelease custody under this subsection." 18 U.S.C. § 3624(g)(10). Subsection (c), at issue here and which predates the FSA, limits prerelease custody to

---

[5] Respondents also attempt to analogize to the Second Chance Act of 2007, but these arguments are likewise not convincing. The Second Chance Act amended 18 U.S.C. § 3624 to provide that the BOP "shall, to the extent practicable" ensure that prisoners may spend a portion of their final months in conditions that allow for reentry into the community, including a community correctional facility. 18 U.S.C. § 3624(c)(1). (emphasis added). The language "to the extent practicable" expressly modifies the language shall and expressly provides the BOP with discretion. Such qualifying language is notably absent from 18 U.S.C. § 3632(d)(4)(C).

1    twelve months.  Subsection (g)(10)'s exclusion of this time limit makes sense given that

2    subsection (c) would have otherwise created a conflict with the requirements of

3    section 3632(d)(4)(C) if eligible prisoners were constrained in the number of FSA

4    credits that could be applied toward prerelease custody or supervised release.  In

5    addition to providing how much time could otherwise be permitted in prerelease

6    custody, subsection 3624(c)(4) further provides that "[n]othing in this subsection shall

7    be construed to limit the authority of the Director of the Bureau of Prisons under

8    section 3621."  (Emphasis added.)  Respondent argues that this language also applies

9    to release under section 3632(d)(4).  Not so.  The fact that section 3624(g)(10) *limits*

10   application of subsection 3624(c) in no way suggests that a separate provision

11   contained in that section somehow applies to limit application of section 3632(d)(4).

12   Thus, the Court agrees with other district courts in this circuit that the language in

13   section 3632(d)(4)(C) is mandatory.

14         The Court now turns to Petitioner's unresolved immigration detainer as a basis

15   for denying her FSA credit application.  Respondents have not identified, and the

16   Court has not found, any place in the relevant sections where it states that individuals

17   with immigration detainers, are prohibited from applying their FSA credits for

18   prerelease.  *See Ramirez,* 2023 WL 8878993, at *4 (discussing that BOP likely

19   exceeded its statutory authority to the extent it cancelled petitioner's credits based on

20   a non-disqualifying conviction).  Indeed, Congress appears to have considered the

21   issue of whether and to what extent undocumented immigrants should be afforded

22   the opportunity to apply time credits and concluded that prisoners who are the

23   "subject of a final order of removal under any provision of the immigration laws" are

24   ineligible to do so.  *See* 18 U.S.C. § 3632(d)(4)(E)(i).  Petitioner has no such final order

25   of removal.  If Congress had intended for noncitizens who are subject to an

26   immigration detainer (but not a final order of removal) to be ineligible to apply

27   credits, it presumably would have said so.  Perhaps recognizing this, in 2023 the BOP

28   issued Change Notice 5410.01 which struck language from Program Statement

5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), such that federal prisoners subject to immigration detainers were no longer automatically prohibited from applying earned time credits.  *Alatorre v. Derr,* No. 1:22-cv-00516 JMS WRP, 2023 WL 2599546, at *5 (D. Hawaii Mar. 22, 2023) (explaining the changes made to Program Notice 5410.01 by Change Notice 5410.01).  While the BOP's program statements are not binding, *see Reeb,* 636 F.3d at 1227, it is nonetheless informative, and in any event is more consistent with the statutory language.[6]

Respondents next argue that even if section 3632(d)(4)(C) is mandatory, that does not mean that Petitioner is entitled to be released from prison.  The argument appears to be that section 3632(d)(4)(C) authorizes the BOP to allocate the credits toward prerelease custody or supervised release, which would allow BOP to shorten the time on supervised release at the <u>end</u> of the term of supervised release.  (Martin Opp'n at 15.)  In other words, instead of transferring Petitioner to prerelease custody or supervised release <u>now</u>, BOP could shorten the period of Supervised Release such that when she is ultimately released, she has less supervised release time.

As an initial matter, the Court agrees that the BOP has discretion to determine how the earned credits are to be divided between prerelease custody and supervised release.  *See* 18 U.S.C. § 3632(d)(4)(C).  However, to the extent that Respondents are attempting to argue that they are able to <u>backend</u> the supervisory release credits such that an eligible prisoner would be eligible for early release but would remain in BOP custody, the Court finds this to be in violation of the second sentence of section 3632(d)(4)(C), which provides that the "Director of the Bureau of Prisons <u>shall transfer</u> eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."  An interpretation that BOP may backend the supervisory release ignores the command of section 3632(d)(4)(C) that the Director "transfer" eligible

---

[6] Respondent has cited cases decided before this change, for instance *Hassan v. Hijar,* which the Court does not view as persuasive.  No. 3:23-cv-00041-KC, 2023 WL 1769207, at *3 (W.D. Tex. Feb. 3, 2023).

1    prisoners, since in that situation the Director would not be transferring the prisoner

2    into either prerelease custody or supervised release.  18 U.S.C. § 3632(d)(4)(C).  Here,

3    Petitioner was already awarded 700 days of prerelease credits and 365 days of

4    supervisory release credits.  While BOP could have divided the time differently

5    between prerelease custody and supervised release, the Director was required to

6    transfer Petitioner into one of the two.

7         For the foregoing reasons, the Court finds that Petitioner has demonstrated a

8    likelihood of success on the merits.

9         **2.  Irreparable Harm**

10        A party seeking preliminary relief must also make a "clear showing" of a

11   likelihood of irreparable harm in the absence of the relief requested.  *Winter,* 555 U.S.

12   at 22; *see All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127,1131 (9th Cir. 2011) (". . .

13   plaintiffs must establish that irreparable harm is likely, not just possible, in order to

14   obtain a preliminary injunction.").

15        Petitioner argues that she is irreparably harmed every day she remains in

16   custody rather than serving the final portion of her sentence on prerelease custody.

17   The Court agrees.  "Every day [Petitioner] is incarcerated rather than serving the final

18   portion of [her] sentence on prerelease custody or supervised release as mandated by

19   the First Step Act results in irreparable injury; petitioner cannot get back the time [she]

20   spends incarcerated."  *Ramirez,* 2023 WL 8878993, at *5.  Respondents contend that

21   no irreparable harm exists to Petitioner because the BOP prerelease programming is

22   discretionary.  However, for the reasons discussed above, the Court finds that in the

23   context of the FSA, prerelease custody or supervised release is mandatory where the

24   prisoner is eligible.  Thus, Petitioner has satisfied this requirement.

25        **3.  Balance of Equities and Public Interest**

26        The final two *Winter* factors merge when the government is the nonmoving

27   party.  *Baird*, 81 F.4th at 1040.  Here, the Respondents' harm is clearly minimal, as they

28   have no discretion to ignore the Congressional directive issued in section

1    3632(d)(4)(C).  On the other hand, the hardship to Petitioner is quite clear: she is

2    harmed every day she is improperly incarcerated rather than on home confinement.

3    Further, the First Step Act was enacted by Congress to provide incarcerated

4    individuals the opportunity to participate in programming that would allow for

5    rehabilitation.  *See* First Step Act of 2018, Pub. L. 115-391, Section 101.  It is unclear to

6    the Court how allowing for the discretionary removal of the incentives for following

7    through with such programming benefits the public.  Moreover, Petitioner had not

8    violated any of the terms of her home confinement and was living with her daughter

9    prior to her detention.  She will be able to continue to reintegrate with her community

10    and continue her rehabilitation while in  prerelease custody.

11    **V.    Conclusion**

12         For the foregoing reasons, IT IS HEREBY ORDERED that:

13    1.    Petitioner's Motion for Temporary Restraining Order (ECF No. 6) is

14          GRANTED;

15          A.    Respondents are ordered to transfer Ms. Vera Kuzmenko back into

16                prerelease custody.  Respondents are further restrained and

17                enjoined from removing Petitioner from prerelease custody based

18                on her immigration status.

19          B.    This Temporary Restraining Order granted here shall expire on

20                March 20, 2025, at 5:00 P.M., absent further order of this Court.

21          C.    No bond shall be required under Federal Rule of Civil Procedure

22                65(c).

23    2.    The parties are directed to meet and confer as to whether any further

24          evidence or briefing need be presented or whether the Court may adopt

25          this order as a preliminary injunction pending a final adjudication on the

26          merits.  The parties shall file a joint response outlining their position(s) by

27          March 10, 2025.  If either party requests further briefing on whether a

28          preliminary injunction should be entered, the parties shall propose a

schedule for Petitioner to file a motion for preliminary injunction and for briefing on said motion.

IT IS SO ORDERED.

Dated: **March 6, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – KUZMENKO225cv00663.tro

15